UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JEROME DERRELL ROBERTSON,

    Plaintiff,

    v.                                       CAUSE NO.: 3:18-CV-522-PPS-MGG

DR. WALA, et al.,

    Defendants.

## OPINION AND ORDER

Jerome Derrell Robertson, a prisoner without a lawyer, filed a motion for a preliminary injunction and motion to consolidate the injunctive relief hearing with a trial on the merits of his claims. He alleges that he is not receiving appropriate medical treatment for his mental condition and that confinement in the segregation unit is causing constant anxiety attacks, suicidal thoughts, and frequent episodes of psychosis. He asks for a transfer to a mental health unit or to general population.

"The purpose of preliminary injunctive relief is to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Platinum Home Mortg. Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722, 726 (7th Cir. 1998) (internal quotation marks omitted). "In order to obtain a preliminary injunction, the moving party must show that: (1) they are reasonably likely to succeed on the merits; (2) no adequate remedy at law exists; (3) they will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the respondent will suffer if the injunction is granted;

and (4) the injunction will not harm the public interest." *Joelner v. Vill. of Washington Park, Ill.*, 378 F.3d 613, 619 (7th Cir. 2004).

To start, the court considers whether Robertson has shown a reasonable likelihood of success on the merits. Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

For a medical professional to be held liable for deliberate indifference to a serious medical need, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). A mere disagreement with medical professionals about the appropriate course of treatment does not establish

deliberate indifference, nor does negligence or even medical malpractice. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

In response to the motion for a preliminary injunction, the defendants submitted the affidavit of Dr. Monica Wala, a licensed psychologist who provides treatment to Robertson and has reviewed his medical records. ECF 15-1. Robertson is placed in restricted housing due to his threatening behavior and sexual misconduct at another correctional facility. Since Robertson's transfer to the Westville Correctional Facility in April 2018, she has seen him on multiple occasions to discuss his mental health. He also has access to weekly visits with a mental health professional at his cell and a monthly appointment with a mental health professional outside of his cell, though he regularly refuses these appointments. She has observed no signs of psychosis that would warrant a transfer. In her medical opinion, Robertson's mental health status is stable, and he does not require a transfer or a new housing assignment due to his mental condition.

In reply, Robertson disputes Dr. Wala's opinion, stating that he was on suicide observation when he arrived at the Westville Correctional Facility and attempted suicide at another correctional facility. ECF 17, 18. According to Robertson, the conditions in restricted housing have a negative effect on his mental condition. He states that he would receive better treatment in a mental health unit and that his mental health treatment at the Westville Correctional Facility is inadequate. He refuses therapy sessions because they are inadequate, violate his right to confidentiality, and cause him mental anguish.

3

After reviewing the evidence, I cannot conclude that Robertson has shown that he is likely to succeed on the merits of his claims. Dr. Wala indicates that she exercised her medical judgment in declining to recommend a transfer; she has not personally observed symptoms that warrant a housing transfer and, based on her review of the medical records, neither has any other member of the medical staff. Moreover, medical staff has provided substantial mental health treatment to Robertson, including suicide observation, therapy sessions, and medication.

By contrast, Robertson's assertions about the effects of restrictive housing on his mental condition and the inadequacy of his medical treatment are not supported with medical evidence and lack sufficient detail to suggest that a housing transfer is medically necessary. Robertson also vaguely asserts privacy concerns but has alleged nothing to suggest that the absence of a confidential setting amounts to a denial of medical treatment or that his privacy concerns represent something more than a mere preference. Further, it is unclear whether Robertson has any right to privacy in this context. *See Franklin v. McCaughtry*, 110 F. App'x 715, 719 (7th Cir. 2004) ("[W]e have not previously held in a published opinion that [prisoners] enjoy a constitutional right to privacy in their medical information.").

The court must also consider whether Robertson will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the defendants will suffer if the injunction is granted. For prisoner cases, the court has limited authority to order injunctive relief. *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012). Specifically, the "remedial injunctive relief must be narrowly drawn, extend no further than necessary

4

to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right." *Id.* (internal quotation marks omitted). As a result, even if the court decided that Robertson was entitled to injunctive relief, the remedy would be to order the defendants to arrange for appropriate mental health personnel to assess Robertson's mental health condition and to make a housing recommendation consistent with that assessment. However, Robertson has regular access to mental health staff, which indicates that he is able to convey his medical concerns to appropriate personnel even without a court order. Therefore, the court concludes that Robertson will not suffer additional harm absent injunctive relief.

In sum, Robertson has not shown a likelihood of success on the merits and has not demonstrated that he will suffer irreparable harm absent injunctive relief.

For these reasons, the court:

(1) DENIES the motion for a preliminary injunction (ECF 8); and

(2) DENIES as MOOT the motion to consolidate the injunction hearing with a trial on the merits (ECF 17).

SO ORDERED on September 11, 2018.

s/ Philip P. Simon  
JUDGE  
UNITED STATES DISTRICT COURT