UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JEROME DERRELL ROBERTSON,

Plaintiff,

v.

CAUSE NO. 3:18-CV-522-DRL-MGG

DR. WALA, *et al.*,

Defendants.

OPINION AND ORDER

Jerome Derrell Robertson, a prisoner without a lawyer, advances Eighth Amendment claims against Dr. Gary Durak, Dr. Monica Wala, and Counselor Michelle Boren for acting with deliberate indifference to serious medical needs by denying him adequate treatment for his mental condition. The parties have filed cross-motions for summary judgment, which remain pending.[1] The defendants argue that their decision to not recommend a transfer to a specialized mental health unit was based on their medical judgment.

BACKGROUND

In the complaint, Mr. Robertson alleges that, on April 20, 2018, he transferred to the Westville Control Unit after attempting suicide at the New Castle Correctional Facility. ECF 1. From April to July 2018, he says he informed Dr. Durak, Dr. Wala, and Counselor Boren of his suicidal ideation and hearing voices, but they refused to hospitalize him and recommended an inadequate treatment plan for his mental condition. Due to their assessments, he has been placed in restrictive housing, which he says is detrimental to his mental health.

---

[1] Mr. Robertson filed a motion to amend his response to the defendants' motion for summary judgment because pages were missing from his initial response. ECF 120. For good cause shown, this motion is granted.

At his deposition, Mr. Robertson testified that he qualifies as seriously mentally ill under departmental policy and should receive ten hours of out-of-cell treatment per week. ECF 105-4 at 5-11. According to his testimony, Dr. Durak did not acknowledge his mental symptoms at intake. *Id.* at 7-8. Counselor Boren never established a treatment plan for him. *Id.* at 8. The defendants could not provide him adequate treatment at the Westville Control Unit because it was not a specialized treatment unit. *Id.* at 9. He also refused to consent to any treatment at the Westville Correctional Facility. *Id.* at 8. Counselor Boren should have referred him to Dr. Wala and recommended a transfer to a facility with a mental health treatment unit. *Id.* Dr. Wala should have found that he was seriously mentally ill and recommended his removal from restrictive housing. *Id.* at 10.

The policy for the Indiana Department of Correction defines seriously mentally ill as follows:

> Offenders determined to have a current diagnosis or recent significant history of schizophrenia, delusional disorder, schizophreniform disorder, schizoaffective disorder, brief psychotic disorder, substance-induced psychotic disorder (excluding intoxication and withdrawal), undifferentiated psychotic disorder, bipolar I or II disorders; offenders diagnosed with any other validated mental illness that is clinically severe, based on evidence-based standards, and that results in significant functional impairment; and offenders diagnosed with an intellectual or developmental disability or other cognitive disorder that results in significant functional impairment. For the purpose of the settlement, "recent significant history" refers to a diagnosis made at any time in the last twelve (12) months.

Indiana Department of Correction, Administrative Restrictive Housing, Policy No. 2-1-11, available at https://www.in.gov/idoc/3265.htm. According to the policy, if an inmate with a serious mental illness is in restrictive housing for more than thirty days, that inmate must receive ten hours of out-of-cell treatment per week. *Id.*

Mr. Robertson also provided mental health records from 2012 and 2015 from Grant-Blackford Mental Health. ECF 102. At that facility, medical professionals diagnosed him with post-traumatic stress disorder, major depressive disorder, recurrent severe without psychotic features, narcissistic personality disorder, cocaine and cannabis dependence, and antisocial personality disorder, but observed no signs of schizophrenia or bipolar disorder.

According to the medical records and affidavits of the defendants, the following occurred. At the New Castle Correctional Facility, on January 30, 2018, Mr. Robertson was removed from restrictive housing and placed on suicide watch for making suicidal threats. ECF 67-3 at 212-22. A mental health counselor noted Mr. Robertson's mental health diagnoses of antisocial personality disorder and depression. *Id.* She observed that he had a history of suicide attempts but that these attempts did not result in harm and were part of a larger pattern of attempting to obtain favorable housing assignments by manipulating his mental health staff. *Id.* The counselor further noted behavior consistent with antisocial personality disorder but no observed signs of schizophrenia or psychosis. *Id.* On February 19, Mr. Robertson refused to cooperate with the treatment plan recommended by Dr. Harmon-Nary. *Id.* at 117-20. She noted his history of manipulating mental health staff to obtain favorable housing assignments and removed him from suicide watch. *Id.*

On March 13, Mr. Robertson expressed frustration that he was in a restrictive housing unit and declined to cooperate with Dr. Harmon-Nary's treatment plan. *Id.* at 86-87. She found no indication against his continued placement in restrictive housing or that he qualified as seriously mentally ill under the departmental policy. *Id.* On March 23 and March 26, Mr. Robertson received conduct reports for sexual conduct and sexual harassment. *Id.* at 26. On March 30, 2018, Mr. Robertson attempted to tie a bed sheet around his neck, citing correctional staff's refusal to give him medication and recreation. *Id.* at 33-42. Medical staff noted no physical injuries as a result of the attempt but placed him in an observation unit. *Id.* On April 6, Mr. Robertson returned to restrictive housing due to his conduct reports and because his behavior disrupted the therapeutic environment of the mental health unit. ECF 67-2 at 303. When medical staff saw him at this cell, he threatened to commit suicide. *Id.* at 234-36. Though Dr. Harmon-Nary did not observe a clinical need for suicide watch, she kept Mr. Robertson on suicide watch until April 19 as a cautionary measure, as Mr. Robertson refused to discuss his suicidal intent with mental health staff. *Id.*

3

On April 20, 2018, Mr. Robertson transferred to the Westville Control Unit and remained on close observation status. *Id.* 173-75, 237-43. On April 23, Mr. Robertson told Michelle A. Boren, a mental health counselor, that he viewed suicide watch as a way to move from the New Castle Correctional Facility and refused to participate in developing a treatment plan. *Id.* at 191-97. On April 24, Mr. Robertson reported feeling better and no suicidal ideation, and Counselor Boren discontinued him from suicide watch. *Id.* at 131-33. On April 25, Counselor Boren attempted to engage with Mr. Robertson after his release from suicide watch, but he declined. *Id.* at 135-36. On April 27, Dr. Gary M. Durak assessed Mr. Robertson as mental status classification level D and recommended weekly mental health therapy and psychiatric medication.[2] *Id.* at 140-52. On May 8, Mr. Robertson submitted a medical request stating that he had constant suicidal thoughts and heard voices due to the conditions of restrictive housing and that he needed specialized treatment. *Id.* at 78. On that day, Mr. Robertson refused to meet with Dr. Barbara Eichman, and he also refused a monthly out of cell visit from a counselor. *Id.* at 159, 163-67. Nevertheless, Dr. Eichman renewed his prescription for Geodon. *Id.*

On May 16 and 17, Mr. Robertson submitted medical requests regarding his housing conditions, stating that he would refuse mental health treatment while in restrictive housing. *Id. at* 80-82. On May 17, Counselor Boren reviewed Mr. Robertson's written complaints of suicidal ideation and noted that he refused to discuss these complaints with mental health staff or to otherwise cooperate with his mental health treatment, which made it difficult to assess him. *Id.* at 89-92. She moved him to an observation cell and placed him on suicide watch. *Id.*

On May 21, Mr. Robertson reported no thoughts of self-harm, and he was removed from suicide watch and returned to restrictive housing. *Id.* at 123-24. On May 22, Dr. Monica H. Wala

---

[2] Under departmental policy, mental status classification D is assigned to inmates with a "[p]sychiatric disorder that causes some impairment and requires frequent psychiatric and/or psychologic services and/or the individual has a history of a serious suicide attempt while in a correctional setting. Services needed may be routine and/or unplanned in nature and may involve mental health monitoring." ECF 67-2 at 152.

examined Mr. Robertson due to his recent release from suicide watch. *Id.* at 51-53. Mr. Robertson denied suicidal ideation but requested appropriate specialized treatment. *Id.* On May 29, Dr. Durak evaluated Mr. Robertson due to his recent release from suicide watch, and Mr. Robertson denied suicidal ideation. *Id.* at 60-62. On June 4, Mr. Robertson reported various mental health symptoms but no suicidal thoughts. *Id.* at 71-72. Counselor Boren concluded that Mr. Robertson was attempting to manipulate staff to be removed from restrictive housing. *Id.* On June 19, Mr. Robertson complained that his experience in restrictive housing was traumatizing but that he was capable of enduring it and expressed no suicidal ideation. *Id.* at 20-23.

On August 7, Dr. Eichman continued Mr. Robertson's medications. ECF 105-1. On August 20, Mr. Robertson submitted a request for placement in a special needs unit. ECF 105-2. Dr. Wala informed him that he was not eligible and instructed him to discuss his concerns with his assigned counselor. *Id.* On October 9, Mr. Robertson refused to meet with Dr. Eichman. ECF 105-1. Since the summer of 2018, Mr. Robertson has been assigned a new counselor, who he also frequently refuses to see. *Id.*

The defendants attest that, while mental health staff may make housing recommendations, only correctional staff can change housing assignments. ECF 105-1, ECF 105-2, ECF 105-3. Based on their medical judgment, they do not believe that Mr. Robertson qualifies as seriously mentally ill or requires a transfer to a specialized mental health unit. *Id.* They have observed him in a stable mental state and have observed no objective signs of psychosis. *Id.* Further, Mr. Robertson impedes their ability to assess his mental state fully by consistently refusing the mental health treatment offered at the Westville Correctional Facility. *Id.*

Mr. Robertson filed a motion to appoint a medical expert to testify about the conflict between his correctional medical records and the records from Grant-Blackford Mental Health. ECF 115. Fed. R. Evid. 706 allows the court to "appoint any expert that the parties agree on and any of its own

choosing." "A court may appoint an expert to help sort through conflicting evidence, but it need not appoint an expert for a party's own benefit or to explain symptoms that can be understood by a layperson." *Turner v. Cox*, 569 F. App'x 463, 468 (7th Cir. 2014). However, after reviewing the evidentiary record, the court finds no material conflict that would require medical expertise to resolve. To the contrary, the records from Grant-Blackford are generally consistent with his correctional medical records and do not suggest that the defendants acted with deliberate indifference. The descriptions of Mr. Robertson's pattern of behavior in each set of records are consistent, and the sets of records both discount Mr. Robertson's assertions that he hears voices and has schizophrenia. Therefore, the motion to appoint a medical expert is denied.

## STANDARD OF REVIEW

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether summary judgment is appropriate, the deciding court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010).

## DISCUSSION

Mr. Robertson asserts that the defendants acted with deliberate indifference by denying adequate treatment for his mental condition. Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to his medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as

6

mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention, and if untreated could result in further significant injury or unnecessary pain, and that significantly affects the person's daily activities or features chronic and substantial pain. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

Deliberate indifference is a high standard, and is "something approaching a total unconcern for a prisoner's welfare in the face of serious risks," or a "conscious, culpable refusal" to prevent harm. *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As the Seventh Circuit has explained:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697-698. Negligence, incompetence, or even medical malpractice do not amount to deliberate indifference. *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004); *Walker v. Peters*, 233 F.3d 494, 499 (7th Cir. 2000).

Furthermore, a prisoner is not entitled to demand specific care, nor is he entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Where the defendants have provided

7

some level of care for a prisoner's medical condition, in order to establish deliberate indifference the prisoner must show that "the defendants' responses to [his condition] were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Synder*, 546 F.3d 516, 524 (7th Cir. 2008). A mere disagreement with medical professionals about the appropriate treatment does not amount to an Eighth Amendment violation. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

While Mr. Robertson's arguments are difficult to follow, the focus of his claims is that the defendants should have recommended him to be transferred from restrictive housing to a mental health unit based on his mental condition, which consists of suicidal ideation and hearing voices. To start, the record contains little evidence to suggest that declining to recommend Mr. Robertson's removal from restrictive housing constitutes deliberate indifference to a serious medical need. Mr. Robertson attempted suicide in 2018, but the defendants reasonably discounted this attempt based on Mr. Robertson's history of manipulating mental health staff for favorable housing assignments, Mr. Robertson's statement that he saw suicide watch as a way to obtain a transfer from the New Castle Correctional Facility, and the absence of any significant injury as a result. Further, though Mr. Robertson complained of hearing voices, the defendants attest that they have never observed objective signs of this symptom. Moreover, according to the medical records, no medical professional has recently diagnosed Mr. Robertson with bipolar disorder, schizophrenia, or any other condition that would qualify him as seriously medically ill under the departmental policy.

Mr. Robertson further argues that the defendants never obtained his consent to treat him and failed to offer him any treatment. While the record is unclear as to whether Mr. Robertson signed a formal consent form, there is no indication that the defendants ever forced treatment on Mr. Robertson without his consent. To the contrary, the record indicates that Mr. Robertson frequently refused to engage with mental health staff as they attempted to treat him with counseling sessions and

8

appointments to discuss psychiatric medication. The defendants also monitored Mr. Robertson following his threats to commit suicide despite ample reason to question the credibility of these threats. Moreover, Mr. Robertson's refusals deprived the defendants of the information necessary to assess Mr. Robertson's mental condition with greater accuracy and to develop a more effective treatment plan. Additionally, this pattern of refusals suggests that Mr. Robertson would not have benefitted from a transfer to a facility with a more robust mental health program.

Based on the record, the court concludes that no reasonable jury could find that the defendants acted with deliberate indifference by providing inadequate treatment for Mr. Robertson's mental condition. Instead, the record unequivocally indicates that the defendants treated Mr. Robertson in accordance with their medical judgment. Therefore, the court grants the defendants' motion for summary judgment and denies Mr. Robertson's motion for summary judgment. As a result, no claims remain in this case.

For these reasons, the court:

(1) GRANTS the motion to amend (ECF 120)

(2) DENIES the motion to appoint an expert (ECF 115);

(3) DENIES the plaintiff's motion for summary judgment (ECF 91);

(4) GRANTS the defendants' motion for summary judgment (ECF 103); and

(5) DIRECTS the clerk to enter judgment in favor of the defendants and to close this case.

SO ORDERED.

January 27, 2020　　　　　　　　　　　　*s/ Damon R. Leichty*
　　　　　　　　　　　　　　　　　　　　Judge, United States District Court